UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JALEN COLDS,

                Plaintiff,

-against-

WESTCHESTER COUNTY;
OFFICER JONES; OFFICER SMYTH;
JOHN DOES NO. 1–2,

                Defendants.

Case No._____

**COMPLAINT**

---

Plaintiff JALEN COLDS, by his attorneys, Rickner PLLC, complaining of the Defendants, alleges, upon information and belief and personal knowledge:

**NATURE OF THE CASE**

1. This is a civil rights action brought against the County of Westchester and members of the Westchester County Department of Correction ("WCDOC"), who violated Plaintiff's rights under the Constitution of the United States and the Constitution of the State of New York, and committed torts actionable under the common laws and statutes of the State and New York.

**JURISDICTION & VENUE**

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiffs rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

4. Venue is properly laid in the Southern District of New York, White Plains Courthouse, because the Plaintiff's claims arose in the County of Westchester.

5. Pursuant to New York State General Municipal Law § 50-e, Plaintiff filed a timely Notice of Claim with Westchester County, which acknowledged his claim through counsel.

6. Plaintiff has not yet appeared for his hearing under New York State General Municipal Law § 50-h, because the COVID-19 pandemic prevented an in-person hearing at the facilities he was incarcerated in. A hearing over the phone was possible, but the County demanded a video conference, which the facility would not accommodate. As such, the County waived the hearing, Plaintiff submits.

**JURY DEMAND**

7. Plaintiff demands a trial by jury.

**PARTIES**

8. Plaintiff is currently incarcerated in a federal facility in New Hampshire. At the time of his injury, he was being held at the Westchester County Jail in Valhalla, New York.

9. Defendant the Westchester County is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a corrections department that acts as its agent and for which it is ultimately responsible.

10. Defendant the Westchester County assumes the risks incidental to the maintenance of its Department of Correction and the employees working therein, as said risks attach to the public consumers of the services provided by the WCDOC.

11. Defendant Correction Officer Jones (first name unknown, described as a black male, approx. 5'10 or 5'11") (hereinafter "Jones") was at all relevant times described herein ECDOC officer, employed by Westchester County. At all relevant times described herein he was acting

under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

12. Officer Jones is entitled to indemnification by Westchester County under New York law for any liability arising from his conduct described herein.

13. Officer Jones is entitled to indemnification by the Westchester County pursuant to contract for any liability arising from his conduct described herein.

14. Defendant Correction Officer Smyth (first name unknown, described as a light-skinned woman) (hereinafter "Smyth") was at all relevant times described herein ECDOC officer, employed by Westchester County. At all relevant times described herein she was acting under color of New York state law, and acting in the course and scope of her duties. She is sued in her individual capacity.

15. Officer Smyth is entitled to indemnification by Westchester County under New York law for any liability arising from her conduct described herein.

16. Officer Smyth is entitled to indemnification by the Westchester County pursuant to contract for any liability arising from her conduct described herein.

17. Defendant John Doe No. 1 was at all relevant times described herein medical staff at WCDOC, employed by Westchester County. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

18. John Doe No. 1 is entitled to indemnification by Westchester County under New York law for any liability arising from his conduct described herein.

19. John Doe No. 1 is entitled to indemnification by the Westchester County pursuant to contract for any liability arising from his conduct described herein.

20. Defendant John Doe No. 2 was at all relevant times described herein a corrections officer at WCDOC, employed by Westchester County. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

21. John Doe No. 2 is entitled to indemnification by Westchester County under New York law for any liability arising from his conduct described herein.

22. John Doe No. 2 is entitled to indemnification by the Westchester County pursuant to contract for any liability arising from his conduct described herein.

23. Defendant John Doe No. 3 was at all relevant times described herein a supervisory officer at WCDOC, employed by Westchester County. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

24. John Doe No. 3 is entitled to indemnification by Westchester County under New York law for any liability arising from his conduct described herein.

25. John Doe No. 3 is entitled to indemnification by the Westchester County pursuant to contract for any liability arising from his conduct described herein.

26. Officer Smyth, Officer Jones, and John Does 1–3 are referred to collectively as the "Individual Defendants."

27. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of WCDOC and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the WCDOC at all times relevant herein, with the power and authority vested in them as officers,

agents and employees of the WCDOC and incidental to the lawful pursuit of their duties as officers, employees and agents of the WCDOC.

28. At all relevant times, the Individual Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

### THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

29. From January 24, 2020 to November 20, 2020, Plaintiff, who is incarcerated in the federal prison system, was temporarily housed as a post-conviction detainee at Westchester County Jail in Valhalla, New York.

30. In April of 2020, Plaintiff started receiving verbal threats from another incarcerated person after he was involved in an altercation with the man over the use of the jail's phones.

31. The Defendants knew of this threat to Plaintiff, both from this public altercation, and from Plaintiff's complaints and grievances about the individual threatening him.

32. As a result, due to these known dangers, the two incarcerated men were supposed to be housed separately and kept apart while in custody at WCDOC.

33. But on May 7, 2020, while Plaintiff was using the phones on the way to recreation, the known assailant was allowed to come into the room by Officer Smyth, who was working in the "bubble," the entry gate leading to the area in which Plaintiff was seated.

34. Almost immediately, the known assailant attacked and violently assaulted Plaintiff.

35. Officer Jones witnessed the assault in close-range, but stood by while Plaintiff screamed for help.

36. When the Individual Defendants finally intervened, it was too late. Plaintiff's shoulder was dislocated, and he was in immense pain.

37. John Doe No. 1, who assessed Plaintiff in the medical unit after the attack, brushed off Plaintiff's injuries and sent him to disciplinary keeplock with only ice and painkillers.

38. Plaintiff wept in pain for the entire night.

39. Plaintiff was taken to Westchester Medical the following day, where the doctors inquired as to why Plaintiff was not brought to the emergency room sooner. This delay in care caused the muscles in Plaintiff's shoulder to tighten, making treatment more difficult and painful than it otherwise would have been had the Defendants immediately sought emergency care.

40. As a result, Plaintiff suffered excruciating pain while doctors attempted to put his shoulder back into place—so much so that the doctors decided that they needed to put Plaintiff under anesthesia to repair the injury.

41. Just a few weeks after this incident, Plaintiff noticed a leak causing flooding on the floor of his dorm at WCDOC. He informed John Doe No. 2 of the leak, but nothing was done to rectify the problem.

42. One or two days later, the pipe that was slowly leaking in the cell burst open, causing massive flooding in which Plaintiff slipped and fell, directly onto his injured arm and shoulder.

43. After this re-injury, Plaintiff was not given diagnostic testing for approximately two-three weeks, prolonging his injuries and the pain caused thereby.

44. Despite noticing John Doe No. 2 to the leak days before the pipe burst, Defendants nonetheless disciplined Plaintiff for the flooded cell, claiming that his open window was the cause of the burst pipe.

45. John Doe 3 is the unknown person responsible for separation orders, who knew of the potential danger from the assault, but did nothing to rectify it.

**THE INJURIES TO PLAINTIFF**

46. This action seeks damages on behalf of Plaintiff for the extraordinary emotional pain and suffering, and injuries to his person, that Plaintiff was forced to endure as a consequence of the Defendants' decidedly wrongful actions.

47. The Individual Defendants' actions were wanton, reckless, and malicious, as well as in blatant disregard of Plaintiff's civil rights, and as such they are liable for punitive damages, as is Westchester County, under the doctrine of *respondeat superior*.

48. All of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

**FIRST CLAIM FOR RELIEF:
FAILURE TO PROTECT — 42 U.S.C. § 1983
AGAINST DEFENDANTS SMYTH, JONES, AND JOHN DOE NO. 3**

49. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

50. Defendants Smyth and Jones knew or should have known—through actual and constructive notice in the form of prior altercations and Plaintiff's complaints—that the person who attacked Plaintiff should never have been allowed near him. They had an absolute constitutional duty to protect Plaintiffs from this danger.

51. But Defendants were deliberately different to this substantial threat of serious harm to Plaintiff. Officer Smyth allowed the assailant to enter the room with Plaintiff, and Officer Jones failed to timely intervene in the assault.

52. That by virtue of the aforementioned acts by these Individual Defendants, Plaintiff was deprived civil rights guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution, and was caused to suffer physical, economic, and emotional injuries.

53. Defendants Smyth and Jones are therefore liable to Plaintiff for damages under 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF:
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS – 42 U.S.C. § 1983
## AGAINST DEFENDANT JOHN DOE NO. 1

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

55. John Doe No. 1 knew of the serious injuries to Plaintiff and was tasked to provide adequate medical, but was nonetheless deliberately indifferent to the severity of the injury and Plaintiff's serious medical needs, which required emergency attention at a hospital.

56. Rather than order immediate and prompt diagnostic testing at an outside facility, John Doe No. 1 sent Plaintiff away with only ice and painkillers, needlessly exacerbating the already painful injury, prolonging treatment, and causing undue suffering when Plaintiff was finally taken to a hospital to have his shoulder reduced.

57. That by virtue of the aforementioned acts by these Individual Defendants, Plaintiff was deprived civil rights guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution, and was caused to suffer physical, economic, and emotional injuries.

58. John Doe No. 1 is therefore liable to Plaintiff for damages under 42 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF:
## DELIBERATE INDIFFERENCE TO DANGEROUS CONDITIONS – 42 U.S.C. § 1983
## AGAINST DEFENDANT JOHN DOE NO. 2

59. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

60. John Doe No. 2 was told of the dangerous conditions in Plaintiff's cell, and knew that Plaintiff was recovering from a serious injury.

61. Nevertheless, John Does No. 2 was deliberately indifferent to the dangerous conditions in Plaintiff's cell, and did nothing to rectify those dangers.

62. That by virtue of the aforementioned acts by these Individual Defendants, Plaintiff was deprived civil rights guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution, and was caused to suffer physical, economic, and emotional injuries when he slipped and fell on his injured arm.

63. John Doe No. 2 is therefore liable to Plaintiff for damages under 42 U.S.C. § 1983, including punitive damages.

## FOURTH CLAIM FOR RELIEF:
## *MONELL* LIABILITY AGAINST WESCHESTER COUNTY

64. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

65. Westchester County is liable for the conduct of the Individual Defendants under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) because the driving force behind these constitutional violations were the *de facto* and explicit policies and practices of the WCDOC.

66. At all relevant times, Defendant Westchester County, through its agent, the WCDOC, had in effect policies, practices, and customs that fail to protect persons in custody from attacks by

other incarcerated persons, even where such incidents are completely preventable due to the presence of a known conflict between persons or groups within the County's custody and control.

67. Westchester County has also failed to properly screen, hire, train, supervise, and discipline the staff of WCDOC to prevent against such known dangers, allowing officers and employees of WCDOC to ignore conflicts between groups or individuals with impunity.

68. As a result, the officers and employees of the WCDOC, including the Individual Defendants, know that their unconstitutional conduct will not be disciplined or sanctioned, further encouraging these violations of persons like Plaintiff, who Defendants failed to protect.

69. These policies and practices are so widespread that, even if not expressly authorized, nonetheless demonstrate that Westchester County has been deliberately indifferent to the risk of such assaults on persons in custody at WCDOC.

70. This deliberate indifference is further evidenced by a number of lawsuits in which the plaintiff was the victim of an assault or attack by another incarcerated person.

71. For example, in *Scott v. Westchester County, et al.*, Case No. 18-cv-07203 (S.D.N.Y. 2018) (pending), the plaintiff alleges that he was shot by a specific gang just before his incarceration, and that the gang has been implicated in dozens of inmate assaults inside the WCDOC. The plaintiff in *Scott* had multiple orders of protection against these gang members, and had filed grievances about the threats, but was nonetheless left unprotected by Westchester County, leading to further assaults.

72. In *Gomez v. Westchester County, et al.*, Case No. 12-cv-4068 (S.D.N.Y. 2012) (settled), the plaintiff was placed into a cell with the very person that the County was court-ordered to keep separate from the Plaintiff. Despite the presence of empty cells in which one of the men could be placed, the officers put them together, and plaintiff was attacked.

73. Moreover, in 2009, the United States Attorney's Office issued a Findings Letter after their investigation of WCDOC, pursuant to the Civil Rights of Incarcerated Persons Act ("CRIPA"). The investigation, which started in 2007, found, among many other constitutional violations, that the WCDOC failed to adequately protect incarcerated persons who were at risk of harm from other inmates, and failed to provide constitutionally-adequate conditions of confinement.[1]

74. In 2015, the U.S. Attorney and Westchester County reached an Agreement which included a demand for better supervision of the incarcerated population, new policies for classifying persons based on risk, including risk of harm from other inmates, and new and specialized training for its officers regarding various forms of segregation, including the enforcement of protective custody. It also addressed deficiencies in medical care at the facility.[2]

75. Despite the federal investigation and monitoring, multiple lawsuits, and continuous complaints from persons incarcerated at WCDOC, Westchester County has failed to fully realize constitutionally-adequate protection for persons in their custody who are at risk of substantial and serious harm, and have failed to properly train and discipline their staff regarding the same, evidencing a *de-facto* policy and custom of deliberate indifference to such risk.

76. That by virtue of the aforementioned polices and customs by Westchester County, Plaintiff was deprived civil rights guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution, and was caused to suffer physical, economic, and emotional injuries, and the County is liable to Plaintiff for money damages.

---

[1] These findings were presented to Mr. Andrew J. Spano, the Commissioner of Correction, in a letter dated November 19, 2009 from former United States Attorney for the Southern District of New York, Preet Bharara.

[2] The 2015 Agreement was terminated in June 2020, after Plaintiff was attacked as a result of the WCDOC's failure to properly train and discipline their officers to conform with the Agreement.

77. As a result of the above tortious conduct, the Individual Defendants are liable for punitive damages.

78. The City of New York is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

### FIFTH CLAIM FOR RELIEF:
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING AGAINST WESTCHESTER COUNTY

79. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

80. Westchester County negligently hired, screened, retained, supervised, and trained the Individual Defendants in the areas of inmate-on-inmate violence, protective custody, timely medical care, and maintaining constitutional standards of confinement.

81. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff's rights under the Constitution of the United States and the Constitution of the State of New York, and committed torts actionable under the common laws and statutes of the State and New York.

82. As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, and the Individual Defendants are liable for punitive damages.

83. Westchester County is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of respondeat superior.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Individual Defendants, as well as Westchester County:

   a. Compensatory damages;
   b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
       March 10, 2022

Rickner PLLC

By:

    Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*