UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JALEN COLDS,

                                    Plaintiff,

      - against -

OFFICER SMYTH, JOHN DOE NO. 1, JOHN
DOE NO. 2, ERIC PAOLILLI, and DR. RAUL
ULLOA,

                                Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-2023 (CS)

Appearances:

Rob Rickner
Rickner PLLC
New York, New York
*Counsel for Plaintiff*

Loren Zeitler
Associate County Attorney
Westchester County Department of Law
White Plains, New York
*Counsel for former Defendant Officer Shakia Smythe*

Seibel, J.

       Before the Court is Plaintiff Jalen Colds's motion for (1) pre-conference discovery to

identify Defendants John Doe No. 1 and John Doe No. 2, (2) leave to file a second amended

complaint adding those individuals to the suit, and (3) leave to extend the time to serve

Defendants Eric Paolilli and Dr. Raul Ulloa.  (ECF No. 28.)  For the following reasons, the

motion is DENIED.  Plaintiff's claims against John Doe No. 1 and John Doe No. 2 are

DISMISSED with prejudice, and Plaintiff's claims against Eric Paolilli and Dr. Raul Ulloa are

DISMISSED without prejudice.

I.   **BACKGROUND**

A.   **Facts**

For purposes of the motion for pre-conference discovery, the Court accepts as true the

facts, but not the conclusions, set forth in the First Amended Complaint, (ECF No. 12 ("FAC")).

Plaintiff, who is currently incarcerated in a federal facility in New Hampshire, was

temporarily held as a post-conviction detainee in the Westchester County Jail (the "Jail") in

Valhalla, New York from January 24 to November 20, 2020.  (FAC ¶¶ 6, 23.)  In April 2020,

Plaintiff began receiving verbal threats from another incarcerated individual with whom Plaintiff

had had a physical altercation over the use of the Jail's phones.  (*Id.* ¶ 24.)  He does not allege

that he reported the threats to anyone.  The altercation had been "serious enough" that Plaintiff

was disciplined with multiple days of "keeplock," or confinement to his cell.  (*Id.* ¶ 25.)  The

fight was also documented in a Disciplinary Report, a Disciplinary Report Investigation Form,

and a Disciplinary Hearing Officer's Report, (*id.* ¶ 26), but the FAC provides no information

about the content of those reports.  Plaintiff alleges that the physical altercation "warrant[ed] [a]

non-association," or a "Keep Separates," restriction.  (*Id.* ¶¶ 27-28.)  A Westchester County

Department of Correction ("DOC") policy requires any DOC staff member who "receives

information which may fall within the criteria for nonassociation" – such as the "physical assault

of an inmate" – to "communicate the same to his/her sector supervisor, who shall, in turn, review

the information and determine if a non-association restriction is warranted."  (*Id.* ¶ 27).  If a non-

association restriction is issued, Jail staff must "make a reasonable effort to keep [the relevant

inmate] separate from one or more inmates."  (*Id.* ¶ 27.)

Plaintiff alleges that while he used the phones on May 7, 2020, the individual with whom

he had the prior physical altercation entered the room, chased Plaintiff, and threw punches at

him.  (*Id.* ¶¶ 31-32, 34.)  In the FAC Plaintiff alleges that DOC personnel failed to protect him,

on three alternative theories:

- Defendant John Doe No. 1 – an officer who witnessed the physical altercation – failed to report the incident to the sector supervisor as required by DOC policy, resulting in no non-association restriction being issued.  (*Id.* ¶¶ 10, 30.)

- Defendant John Doe No. 2 – the sector supervisor – was informed about the altercation but failed to enter a non-association restriction.  (*Id.* ¶¶ 13, 30.)

- A non-association restriction was entered but former Defendant DOC Officer Smythe failed to enforce that restriction.  (*Id.* ¶ 34.)

As a result of the attack, Plaintiff suffered a dislocated shoulder that caused him immense

pain, based on which he informed Defendant Paolilli, the nurse practitioner who examined

Plaintiff after the fight, that his arm was either broken or dislocated.  (*Id.* ¶¶ 35-36.)  Plaintiff

returned to medical several hours later, complained of worsening pain, and demanded x-rays and

hospital treatment.  (*Id.* ¶ 36.)  Plaintiff's requests were denied, and Paolilli instead provided him

with a muscle relaxer, a response that Defendant Dr. Ulloa reviewed and approved.  (*Id.*).

Plaintiff cried in pain throughout the night and experienced worse pain the following day.

(*Id.* ¶¶ 37-38.)  That day, DOC medical staff brought Plaintiff to a hospital, where he was

informed that the treatment to relocate his shoulder would be more difficult and painful because

of the delay in care at the Jail.  (*Id.* ¶¶ 38-39).  The treatment required sedation, which carries

risks, (*id.* ¶ 38), although Plaintiff does not allege that any such risk materialized.  Plaintiff

alleges that he would not have undergone "risky sedation" or experienced "extreme pain" if Jail

staff had promptly brought him to a hospital.  (*Id.* ¶ 39.)

B.   **Procedural History**

Plaintiff commenced this lawsuit on March 10, 2022, originally naming Officer Jones, Officer Smythe, and Westchester County (the "County") as Defendants.  (ECF No. 1.)  On June 16, 2022, then-Defendants filed a pre-motion letter in anticipation of a motion to dismiss, (ECF No. 8), and Plaintiff responded on July 5, 2022, (ECF No. 10).  On July 12, 2022, the Court held a pre-motion conference and granted Plaintiff leave to amend his complaint.  (*See* Minute Entry dated July 12, 2022.)  On August 26, 2022, Plaintiff filed his FAC, removing Defendants Jones and Westchester County and adding claims against Defendants John Doe No. 1, John Doe No. 2, Eric Paolilli, and Dr. Raul Ulloa.  (*See* FAC ¶¶ 1, 43-52.)

In his FAC, Plaintiff argues that Defendants violated his constitutional rights under 42 U.S.C. § 1983.[1]  (*Id.* ¶¶ 43-52.)  Plaintiff asserts that Defendants Smythe, John Doe No. 1 and John Doe No. 2 violated his Eighth Amendment rights by failing to protect him, in that they permitted the other incarcerated individual to be in close contact with Plaintiff despite knowing that the individual posed a substantial threat of serious harm to Plaintiff, (*id.* ¶¶ 43-47), and that Paolilli and Ulloa acted with deliberate indifference to his medical needs, further violating his constitutional rights, (*id.* ¶¶ 48-52).

On November 30, 2022, former Defendant Smythe moved to dismiss the FAC for failing to satisfy Federal Rule of Civil Procedure ("FRCP") 8(d)(2) and failing to state a claim under FRCP 12(b)(6).  (ECF Nos. 17-21.)  On July 7, 2023, I issued a bench ruling granting Smythe's motion to dismiss in its entirety.  (ECF No. 36; *see* Minute Entry dated July 7, 2023.)  In sum, I concluded that Plaintiff had failed to plausibly allege that Smythe's "failure to be aware of the non-association order or her failure to enforce it on the day in question constitutes anything more

---

[1] He also seeks an award of attorneys' fees and costs under 42 U.S.C. § 1988.  (FAC ¶ 3.)

than negligence, which cannot support a failure to protect claim." (ECF No. 36 at 15:18-21.)  I also directed Plaintiff's counsel to show cause as to why the Court should not dismiss the case as to John Doe No. 1 and John Doe No. 2, who had not been identified, and as to Paolilli and Ulloa, who had not been served. (*Id.* at 18:20-19:19; *see* Minute Entry dated July 7, 2023.)

On July 10, 2023, Plaintiff filed a letter motion stating that the John Doe Defendants had not been served because he did "not know their names and ha[s] no way to obtain them without discovery." (ECF No. 24 at 1.)  Plaintiff requested that the Court order the County to identify the John Doe Defendants and permit Plaintiff to amend his complaint to add their names. (*Id.*)[2] Plaintiff also requested that the Court grant an extension of time to serve Paolilli and Ulloa, or in the alternative, to dismiss the claims against them without prejudice. (*Id.* at 2.)  On July 11, the County responded to Plaintiff's letter, noting that DOC had received a Freedom of Information Law ("FOIL") request from Plaintiff's counsel on May 25, 2021, and in response had, on June 17, 2021, forwarded to Plaintiff's counsel documents that included records of the incident and the names of officers involved. (ECF No. 25.)  Plaintiff replied that the records contained the names of several officers but that it was "not apparent . . . which of these officers is actually John Doe No. 1 or John Doe No. 2." (ECF No. 26.)

I subsequently ordered Plaintiff to make a formal motion providing authority: (1) for the proposition that a municipality must identify John Doe defendants for a counseled plaintiff, and (2) to support his request for an extension of time to serve Paolilli and Ulloa. (ECF No. 27.)  I stated that the County, in its opposition, could address whether the FAC states a claim against the

---

[2] Plaintiff also asked that the Court deny this request as moot if the Court determined that the FAC lacked sufficient evidence to establish the John Does' subjective state of mind as to the Eighth Amendment claims. (*See* ECF No. 24 at 1.)

John Doe Defendants.  (*Id.*).  The instant motion and accompanying briefing followed.  (ECF

Nos. 28-34, 37.)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While FRCP 8 "marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at

678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying the pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

requires the reviewing court to draw on its judicial experience and common sense." *Id.*
"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

   **B.**     **Motion for Expedited Pre-Conference Discovery**

   FRCP 26(d)(1) prevents a party from seeking discovery "from any source before the parties have conferred as required by Rule 26(f), except . . . by court order." Fed. R. Civ. P. 26(d)(1); *see Strike 3 Holdings, LLC v. Doe*, No. 23-CV-4360, 2023 WL 4931669, at * 1 (S.D.N.Y. Aug. 2, 2023). "When determining whether to grant expedited discovery, courts in this District apply a flexible standard of reasonableness and good cause." *SingularDTV, GmbH v. Doe*, 637 F. Supp. 3d 38, 42 (S.D.N.Y. 2022).[4]

> A variety of factors . . . guide this inquiry, including the relative prejudices that will be suffered by the parties, the plaintiff's ability to make out a prima facie claim, the specificity of the discovery request, the availability of alternative means to obtain the information, the necessity of the information for the plaintiff's claim, the defendant's expectation of privacy, the proportionality of the request, the timing of the motion, and the diligence of the requesting party.

---

   [4] Some courts in the Second Circuit apply an alternative test that considers the following factors:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted.

*Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); *see Se. Farms, Inc. v. Martens Fresh, LLC*, No. 23-CV-100, 2023 WL 2447752, at *5 (N.D.N.Y. Jan. 31, 2023) (collecting cases).  Other cases reject that test in favor of the more flexible and liberal reasonableness standard.  *See, e.g.*, *New York v. Mountain Tobacco Co.*, 953 F. Supp. 2d 385, 392 (E.D.N.Y. 2013); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005).  As I find that Plaintiff fails under the more plaintiff-friendly reasonableness test, *see Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2018 WL 8967042, at *2 (E.D.N.Y. Apr. 23, 2018) (reasonableness test is "more liberal and flexible"), I need not wade into this controversy further, except to note that the *Notaro* factors can inform the reasonableness test.

*Reinhardt v. City of Buffalo*, No. 21-CV-206, 2021 WL 3174018, at *2 (W.D.N.Y. June 7, 2021); *see In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, No. 14-CV-4242, 2014 WL 12959675, at *1 (S.D.N.Y. July 23, 2014) ("This [reasonableness] test requires a district court to examine the request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.").

When a case involves John Doe defendants, courts typically "have found good cause for expedited discovery to determine the identity of such defendants where the plaintiff has stated a *prima facie* case and is unable to identify the defendants without a court-ordered subpoena." *SingularDTV, GmbH*, 637 F. Supp. at 42; *see adMarketplace, Inc. v. Tee Support, Inc.*, No. 13-CV-5635, 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2023) (collecting cases).  But courts in this district "have generally only granted expedited discovery requests to identify John Doe defendants . . . where a plaintiff established that it lacked the means to obtain the defendant's identifying information other than by the subpoena at issue," and have denied such requests where "a plaintiff merely offered a self-serving conclusory assertion that defendants' identities could only be uncovered by subpoenaing the third parties at issue."  *SingularDTV*, 637 F. Supp. at 42 (collecting cases).

### C.    Time for Service

FRCP 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court –
> on motion or on its own after notice to the plaintiff – must dismiss the action
> without prejudice against the defendant or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

Thus, where a plaintiff can show good cause for a delay in service beyond the 90 days mandated by the Federal Rules, the court must give the plaintiff more time to effectuate service.  *See Buon*

*v. Spindler*, 65 F.4th 64, 75 (2d Cir. 2023); *Zapata v. City of N.Y.*, 502 F.3d 192, 197 (2d Cir.

2007); *Angling Auto. LLC v. EBF Holdings, LLC*, No. 23-CV-1404, 2023 WL 4548273, at *2

(S.D.N.Y. July 14, 2023).  It is the plaintiff's burden to show good cause, and the burden is a

heavy one.  *See, e.g.*, *Williams v. Vaccaro*, No. 19-CV-3548, 2022 WL 2179726, at *3 (S.D.N.Y.

June 1, 2022), *report & recommendation adopted by* 2022 WL 2181647 (S.D.N.Y. Jun. 16,

2022); *Capogrosso v. Gelbstein*, No. 18-CV-2710, 2019 WL 6406444, at *3 (E.D.N.Y. Jan. 30,

2019), *report & recommendation adopted by* 2019 WL 4686448 (E.D.N.Y. Sept. 25, 2019);

*Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006).  "In considering whether a

plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts to effect service

and the prejudice to the defendant from the delay."  *Benites v. N. Y. Dep't of Corr. & Cmty.

Supervision*, No. 21-CV-6863, 2023 WL 1966181, at *2 (S.D.N.Y. Feb. 13, 2023); *see Spear v.

Hugles*, No. 08-CV-4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

A plaintiff's diligence and reasonable efforts to effect service, "including but not limited

to whether plaintiff moved under FRCP 6(b) for an extension of time," should be considered.

*See AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y.

2000).  The party seeking a good cause extension must generally demonstrate "exceptional

circumstances," such as where the failure to serve properly was beyond the party's control.

*Benites*, 2023 WL 1966181, at *2; *see Singh v. Maresco*, No. 04-CV-1439, 2007 WL 2471690,

at *6 (E.D.N.Y. May 23, 2007), *report & recommendation adopted by* 2007 WL 2471685

(E.D.N.Y. Aug. 30, 2007); *Beauvoir*, 235 F.R.D. at 56.  "An attorney's inadvertence, neglect,

mistake, or misplaced reliance does not constitute good cause."  *Howard v. Klynveld Peat

Marwick Goerdler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999);

*see Benites*, 2023 WL 1966181, at *2; *Singh*, 2007 WL 2471690, at *6.

Even absent a showing of good cause, a court may, in its discretion, extend the time for a plaintiff to complete service – but is not required to do so.  *See* Fed. R. Civ. P. 4(m) advisory committee's note (the Rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown"); *Buon*, 65 F.4th at 75 (well settled that "[d]istrict courts have discretion to grant extensions under Rule 4(m) even in the absence of good cause").  Courts consider the following factors in deciding whether to grant this relief:

> (1) whether the applicable statute of limitations would bar a refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by granting of plaintiff's request for relief from the provision.

*Benites*, 2023 WL 1966181, at *2; *see Junior-Donohue v. Fudge*, No. 23-CV-2474, 2023 WL 5152299, at *1-2 (S.D.N.Y. Aug. 10, 2023).

## III.   DISCUSSION

### A.   Claims Against John Does

Plaintiff's claims against the John Does fail under FRCP 12(b)(6).

Because Plaintiff was a post-conviction detainee during the relevant period, (FAC ¶ 23), his failure to protect claim is analyzed under the Eighth Amendment  *See Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *6 (S.D.N.Y. Dec. 5, 2019); *see also Morrison v. United States*, No. 17-CV-6779, 2019 WL 5295119, at *4 (S.D.N.Y. Oct. 18, 2019) ("While the constitutional status of convicted, but not sentenced, defendants remains an unanswered question in th[e] [Second] Circuit, district courts apply the Eighth Amendment, not the Fifth or Fourteenth Amendments, to individuals in the [inmate's] circumstance."); *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *11 (E.D.N.Y. Apr. 22, 2015) (agreeing with the "weight of the

10

authority" that persons who have been convicted, but not sentenced, do not have the same protections as pretrial detainees for alleged constitutional deprivations).

The Eighth Amendment prohibits cruel and unusual punishment. *Hayes v. N.Y.C. Dep't of Corr*., 84 F.3d 614, 620 (2d Cir. 1996); *Mays*, 2019 WL 6619330, at *7. It requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes*, 84 F.3d at 620; *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials therefore have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. But "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, "the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes*, 84 F. 3d at 620; *see Darnell v. Pineiro*, 849 F.3d 17, 33 (2d Cir. 2017) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

To establish deliberate indifference, Plaintiff must satisfy a two-part test. First, Plaintiff must show that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, "the prison official involved must have acted with a 'sufficiently culpable state of mind.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Farmer*, 511 U.S. at 834); *see Hayes*, 84 F.3d at 620. "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes*, 84 F.3d at 620. "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.* "The official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Darnell*, 849 F.3d at 32-33 ("'[P]unishment' connotes a subjective intent on the part of the official, which also requires awareness of the punishing act or omission."); *Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) (to establish deliberate indifference, "a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety"). "A defendant's knowledge can be established through 'inference from circumstantial evidence,' including 'from the very fact that the risk was obvious.'" *Mays*, 2019 WL 6619330, at *7 (quoting *Farmer*, 511 U.S. at 842); *see Ross v. Corr. Officers John & Jane Does 1-5*, 610 F. App'x 75, 77 (2d Cir. 2015) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient to make this showing."); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (to the same effect).

Plaintiff argues that the FAC satisfies the deliberate indifference test because an altercation serious enough to require his placement in keeplock poses a substantial risk of serious harm, and the John Does must have known of and subsequently disregarded that risk. (ECF No. 37 ("P's Reply") at 1-3.) The County Attorney argues that Plaintiff has failed to allege facts plausibly showing that the altercation was serious enough to warrant non-association, instead relying on his personal opinion, and that Plaintiff has shown at most a negligent state of mind on the part of the Does. (ECF No. 31 ("County's Opp.") at 5, 8-9.)

Plaintiff has not sufficiently alleged facts to plausibly meet the objective prong. "Courts may find a substantial risk of serious harm where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by the plaintiff regarding the altercation or a request by the plaintiff to be separated from the attacker." *Dietrich v. County of*

*Orange*, No. 19-CV-10485, 2020 WL 5209816, at \*3 (S.D.N.Y. Sept. 1, 2020); *see Mays*, 2019

WL 6619330, at \*7; *see, e.g.*, *Grant v. Hogue*, No. 17-CV-3609, 2019 WL 3066378, at \*7

(S.D.N.Y. July 12, 2019) (objective prong satisfied where plaintiff alleged "previous altercation"

that was "coupled with a complaint by plaintiff"); *McCormick v. County of Westchester*, No. 19-

CV-2916, 2023 WL 2632204, at \*6 (S.D.N.Y. Mar. 24, 2023) (plaintiff satisfied objective prong

when he was repeatedly threatened and assaulted by gang members, complained about the

altercations to officers, and was then assaulted a third time by gang members); *Robinson v.

Spanno*, No. 20-CV-642, 2021 WL 1109053, at \*4 (S.D.N.Y. Mar. 23, 2021) (plaintiff satisfied

objective prong when he alleged that he was subject to multiple attacks and threats,

communicated to a prison official that a subsequent attack would occur, and was later attacked

by same assailants); *Scott v. Westchester County*, 434 F. Supp. 3d 188, 199 (S.D.N.Y. 2020) (to

the same effect).[5]

Here Plaintiff alleges only that some sort of physical altercation took place between

himself and another inmate; that as a result he was placed on keeplock for several days; and that

the other inmate made verbal threats.  (*See* FAC ¶¶ 24-26.)  In the absence of any allegation that

Plaintiff told anyone about the threats or otherwise made a complaint, his claim must rest on the

mere fact of the altercation and discipline.  But his claim that the incident was serious enough to

warrant a separation order, or that the other inmate otherwise posed a significant risk of serious

---

[5] Additionally, the existence of a no-contact order may indicate that a substantial risk of harm may exist.  *See Mays*, 2019 WL 6619330, at \*8 ("District courts in the Second Circuit have pointed to the existence, or lack thereof, of no-contact orders as indications that a substantial risk of harm may exist."); *Smith v. County of Westchester*, No. 17-CV-9858, 2019 WL 3006407, at \*3 (S.D.N.Y. July 10, 2019) (existence of a DOC "keep-separate" order following fistfight plausibly alleged substantial risk of serious harm to plaintiff's safety).  But because Plaintiff's theory as to the John Does is that DOC did not issue a keep-separate order, his citation to cases in which such orders were issued, (*see* ECF No. 29 ("P's Mem.") at 5; P's Reply at 1-2), does nothing to show that the objective prong is satisfied here.

harm, is conclusory.  Plaintiff provides no details about the incident or any other facts that would render that conclusion plausible.  That the incident led to Plaintiff being disciplined does not suffice, because that discipline could have been imposed for any number of reasons apart from the other inmate's conduct.  For all we know, the "physical altercation" could have involved mere shoving, and the discipline imposed on Plaintiff could have been for any number of reasons, such as creating a disturbance, being verbally abusive to staff or refusing an order to leave the area.  Indeed, in the absence of an allegation that the other inmate was disciplined, that Plaintiff was placed in keeplock might suggest, if anything, that he was the aggressor and posed a risk to the other inmate.  In short, there are no facts in the FAC "nudg[ing]" the allegation that that Plaintiff faced a significant risk of serious harm "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 683.

Plaintiff also has not alleged facts plausibly suggesting that the John Doe Defendants possessed the state of mind required by the subjective prong.  For purposes of this analysis, I consider each alternative claim:  with respect to John Doe No. 1, I assume that he observed the altercation but did not report it to John Doe No. 2, and with respect to John Doe No. 2, I assume that John Doe No. 1 reported the altercation but John Doe No. 2 did not enter a non-association restriction.

As to John Doe No. 1, not only are there no facts as to what the other inmate did that would have put Doe No. 1 on notice of significant risk of serious harm to Plaintiff, but there are no facts plausibly suggesting that in fact Doe No. 1 drew the inference that such a risk existed and disregarded it.  *See Farmer*, 511 U.S. at 837 ("The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  For all we know, the physical altercation was so minor that Doe No.

1 did not think it worth reporting, or he meant to report it but got distracted and forgot, or he mistakenly thought someone else would report it.  There are no facts from which I can infer that John Doe No. 1 knew he should report the incident and deliberately decided not to do so.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.[6]

Likewise, assuming for purposes of the claim against John Doe No. 2 that he received a report about the altercation, there is no indication in the FAC that the information he received was such that any reasonable sector supervisor would have issued a non-association restriction. For all we know, he sincerely concluded that the incident was not sufficiently serious to warrant the disruption that a non-association order would entail, or he misplaced the report, or he meant to issue the restriction but was too busy to get around to it before May 7.  There are no facts from which I can infer that John Doe No. 2 knew he should issue the restriction and deliberately decided not to do so.

At best, Plaintiff alleges that the John Doe Defendants negligently failed to enter a non-association order.  But mere negligence is insufficient to support Plaintiff's Section 1983 claims. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) ("[N]egligence is not deliberate indifference."); *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *12 (S.D.N.Y. Sept. 26, 2019) ("'[M]ere negligence' is insufficient to state a claim for deliberate indifference."); *Miller v. County of Nassau*, No. 16-CV-584, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018)

---

[6] Plaintiff is correct that "the Second Circuit recognizes that 'evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it,'" (P's Reply at 2 (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)), but he provides no facts about the altercation from which it could be inferred that that any risk was obvious or must have been known.

("[A]ny § 1983 claim or a violation of due process requires proof of a *mens rea* greater than

mere negligence."); *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *5 (S.D.N.Y.

Sept. 30, 2015) ("At most, Plaintiff's claims suggest that [Defendants were] negligent in failing

to follow security protocol.  Under the second prong of a failure to protect claim, however, a

plaintiff must allege a culpable state of mind—mere negligence will not suffice.").  Indeed,

Plaintiff's concessions that the Does' "failure[s] may be negligent," (P's Mem. at 5), and that "it

is simply impossible for him to know what these John Does may have intended," (P's Reply at

2), show that he has not surmounted the bar to state a plausible claim for deliberate indifference.[7]

Accordingly, the claims against John Doe No. 1 and John Doe No. 2 are dismissed for

failure to state a claim.

**B.      Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may properly be denied for:  'undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d

---

[7] While conceding that the conduct may have been merely negligent, Plaintiff argues that deliberate action may be inferred because "[t]he entire reason for separation orders is to protect incarcerated people from other incarcerated people, so any officer would know that failing to effectuate a separation would create a serious risk of harm."  (P's Mem. at 5.)  This circular reasoning fails.  Not only does it elide the requirement that the officer know that a significant risk of serious harm exists, but Plaintiff seems to be arguing that because the purpose of a separation order is to protect an inmate, the absence of a separation order must always mean that the defendant deliberately decided not to protect the inmate.  This contention leaves no room for negligence, or sincerely held but mistaken judgments, which do not violate the Eighth Amendment.  *See Darnell*, 849 F.3d at 32-33.  An officer who perceives and appreciates the risk, but purposely decides to do nothing about it, is deliberately indifferent.  An officer who misjudges the risk, or perceives it but carelessly fails to follow through, is not.

184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).

Granting Plaintiff leave to amend the complaint a second time will not save these claims. Plaintiff has already amended his complaint, after having the benefit of the County's pre-motion letter in relation to Smythe's motion to dismiss, (*see* ECF No. 8), and the Court's comments at the pre-motion conference (*see* Minute Entry dated July 12, 2022).  While those related to Smythe's motion, the standards required to state a plausible failure to protect claim apply equally to the claims against the Does.  Generally speaking, a plaintiff's failure to fix deficiencies in the previous pleading – after receiving notice of those defects – is alone sufficient to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.").

Further, despite having that information as well as the Court's bench ruling on Smythe's motion, (*see* ECF No. 36 at 16:20-17:20), Plaintiff requests leave to file a second amended complaint solely to add the names of the John Does, once discovered, (P's Mem. at 6), but he does not suggest that he possesses facts that would cure the deficiencies identified in this decision.  To the contrary, Plaintiff states that he has already provided all the information he has or can get regarding the John Does.   (ECF No. 24 at 1 ("What we have plead[ed] in the Amended Complaint is all the information we have available.").)  Accordingly, the Court declines to grant Plaintiff leave to amend.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how

amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

### C.   Pre-Conference Discovery to Identify John Does No. 1 and No. 2

In any event, I would deny Plaintiff's request to conduct pre-conference discovery to identify the John Does.  Plaintiff argues that he will be irreparably injured if he cannot identify the John Does before the statute of limitations expires on November 3, 2023,[8] (P's Mem at 3-4); that he has sufficiently alleged Eighth Amendment deliberate indifference claims, (*id.* at 4-5); and that his request would pose a minimal burden for "the City of New York or the federal government,"[9] pointing to Smythe's counsel's July 11, 2023 letter that states that the records provided to Plaintiff under FOIL contain the names of the John Does, (*id.* at 5).  He further contends that he has attempted to discover the identities of John Doe No. 1 and John Doe No. 2 by asking Plaintiff and other incarcerated individuals, serving FOIL requests, and requesting discovery when opposing Smythe's motion to dismiss.  (ECF No. 30 ¶¶ 2-5.)  Plaintiff contends that the Court could either order the County to identify the officers or permit Plaintiff to serve a

---

[8] Plaintiff adds that he should not have to rely on uncertain arguments that the claims would relate back to an earlier filing for statute of limitations purposes if the John Does can be identified beforehand.  (P's Mem. at 4.)

[9] Neither the City nor the federal government is involved in this case.  This nonsensical drafting most likely resulted from Plaintiff's counsel carelessly recycling an earlier brief.

subpoena formally requesting that the County provide a witness to testify regarding that

information under oath.  (P's Mem. at 6; P's Reply at 1.)

The County Attorney argues that Plaintiff has failed to cite any case in which a Court

required a municipal defendant to divulge the names of John Doe defendants to a counseled

plaintiff and that Plaintiff had ample opportunity to identify the John Does over years.  (County's

Opp. at 3-4.)  The County highlights that more than two years ago Plaintiff's counsel received

records that contained the names of the officers who witnessed Plaintiff's incidents.  (*See id.*;

ECF No. 32-1 ("Smith Decl.") ¶¶ 4-9.)  The County also provided Plaintiff with instructions on

how to resubmit requests for categories of information that were not reasonably described, as

well as instructions on how to appeal.  (Smith Decl. ¶ 10.)  Yet Plaintiff did not resubmit, appeal

the determination or serve any additional FOIL requests.  (County's Opp. at 3; Smith Decl. ¶ 10-

12.)  The County thus argues that the Court should deny Plaintiff's "abandoned attempt" to order

Westchester County to identify the John Doe Defendants.  (County's Opp. at 3.)

Plaintiff's request for expedited discovery fails under the "reasonableness" or "good

cause" standard.  As a threshold matter, as discussed above, Plaintiff has not stated a *prima facie*

case on the claims against the John Doe Defendants.  *See supra* at 10-16.  But even if he had, on

balance, the factors counsel against his application.  While Plaintiff theoretically is prejudiced by

not being able to name the Does, because without that information his case against them cannot

proceed, Defendants are also somewhat prejudiced, because it has now been more than three

years since the incident and memories will have faded.  *Cf. Junior-Donohue*, 2023 WL 5152299,

at *4 ("[T]he specter of prejudice to Defendants from delays in service compound the challenges

of defending the action because of the passage of time."); *Benites*, 2023 WL 1966181, at *5

("The prejudice to Defendant Officers is particularly stark in the circumstances of this case, since

the relevant events occurred four and a half years ago, and their memory of the events undoubtedly has faded.").

Nor has Plaintiff shown that he cannot identify the John Does without a court order.  *See adMarketplace*, 2013 WL 4838854, at *2.  Rather, Plaintiff argues that while the documents sent by the County in response to his FOIL requests may contain the names of the John Does, he "simply does not know which officer corresponds to which John Does." (P's Reply at 1.)  This contention is illogical.  First, the records reveal the names and badge numbers of the correction officers who witnessed the incident, (ECF No. 25; Smith Decl. ¶ 9), and by Plaintiff's account, any officer present for the altercation would be a John Doe, (*see* FAC ¶ 30 (defining "John Doe #1" as "[t]he staff member(s) who witnessed . . . the fight")).[10]  There would seem to be no reason, apart from negligence or lack of diligence, not to have named any such people before now.  Second, if Plaintiff does not wish to sue all officers who witnessed the fight but just a particular one, and he does not know which one, it does not appear that the County would have any way of knowing which one either.[11]  Third, Plaintiff's submissions do not mention any investigation into the names contained within the FOILed documents – received by Plaintiff's

---

[10] The full sentence reads, "The staff member(s) who witnessed and reported the fight, referred to herein as John Doe #1, failed to report it to the sector supervisor, or the sector supervisor, John Doe #2, failed to enter a non-association restriction."  (FAC ¶ 30.)  I thus infer that Plaintiff means to identify as John Doe No. 1 the staff member(s) who witnessed but failed to report the fight.  If John Doe No. 1 were really an officer who witnessed the fight and reported it, Plaintiff would have no claim against that officer.

[11] Contrary to Plaintiff's assertion that "counsel for Defendant Smyth[e] has admitted in a letter to this Court on July 11, 2023 that she knows the names of the John Does because they are in the records provided under FOIL," (P's Mem. at 5), that letter states only that in response to Plaintiff's FOIL request, the County provided "[r]esponsive documents, which included records of the incident alleged in the Complaint and names of officers involved," (ECF No. 25).  The County Attorney never indicated that she knew which officer(s) Plaintiff intended to sue.  Indeed, Plaintiff's argument concedes that his counsel has the same information as the County Attorney.

counsel more than two years ago – or any subsequent FOIL requests or appeals, despite the County providing detailed information as to how to follow up.  (*See* Smith Decl. ¶ 10.)  A FOIL request could also have identified the sector supervisor on the date in question, but Plaintiff never requested that information.

Finally, Plaintiff's counsel has been anything but diligent in seeking the identities of the Does.  After the FOIL request in mid-2021, and the invitation to follow up, (*see id.* ¶¶ 4-12), Plaintiff's counsel apparently did nothing to pursue the matter.  No request for expedited or pre-conference discovery was made until, after granting the motion to dismiss as to Smythe, I ordered Plaintiff to show cause why the claims against the Does should not be dismissed.  The timing and diligence factors militate against Plaintiff in the face of this inaction for two-plus years.

Given the weakness of the claims, the failure to show that the information could not be obtained elsewhere, and the record of lackadaisical pursuit of the information, Plaintiff "falls woefully short of establishing good cause" to grant expedited discovery.  *SingularDTV*, 637 F. Supp. 3d at 44 (collecting cases); *compare Reinhardt*, 2021 WL 3174018, at *3 (declaration documenting "Plaintiffs' diligence in pursuing this [pre-discovery] information through alternative means" supported plaintiffs' motion for pre-conference discovery); *Strike 3 Holdings, LLC v. Doe*, No. 20-CV-4501, 2021 WL 535218, at *5 (E.D.N.Y. Feb. 12, 2021) (plaintiff's diligence in seeking discovery "tip[ped] the balance in favor of granting Plaintiff's motion for early discovery")*.* Thus, Plaintiff has not satisfied the "reasonableness" or "good cause" standard.

Furthermore, Plaintiff's reliance on *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), is misplaced. "Plaintiff in the instant matter is counseled, and therefore not entitled to the assistance afforded *pro se* litigants by *Valentin* in identifying John and Jane Doe defendants." *Terranova v. New York State Dep't of Corr. & Cmty. Supervision*, No. 16-CV-537, 2019 WL 1316775, at *3 n.2 (W.D.N.Y. Mar. 22, 2019). Courts in this district have consistently applied *Valentin* to *pro se* – not counseled – plaintiffs. *See, e.g., Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010) ("District courts have a responsibility to assist *pro se* plaintiffs in their efforts to serve process on defendants."); *Stephen v. Hall*, No. 19-CV-2225, 2022 WL 6765791, at *1 (S.D.N.Y. Oct. 11, 2022) ("Under *Valentin v. Dinkins*, a *pro se* litigant is entitled to assistance from the district court in identifying a defendant."); *Rodriguez v. Thoms*, No. 20-CV-751, 2022 WL 1768917, at *2 (W.D.N.Y. June 1, 2022) (*Valentin* requires that *pro se* plaintiffs be accorded discovery to comply with Rule 4(m)); *Sosa v. Bustos*, No. 17-CV-417, 2020 WL 1940550, at *6 (S.D.N.Y. Apr. 22, 2020) ("Courts generally give *pro se* plaintiffs a reasonable opportunity for discovery to learn the identities of responsible officials."). *But see DaCosta v. City of N. Y.*, 296 F. Supp. 3d 569, 598-99 (E.D.N.Y. 2017) (Judge Weinstein contending that *Valentin* should apply to counseled plaintiffs but recognizing that "district courts have largely limited [*Valentin*] to the *pro se* context") (collecting cases). While *Valentin* may suggest that the Court has inherent authority to require municipalities to identify Does, at least in that limited context, it does not suggest that the court should do so here. Likewise, that the Court may have the authority to order certain discovery in § 1983 cases against the City of New York, as set forth in S.D.N.Y. Local Civil Rule 83.10, does not answer the question whether the Court should order identification of the Does here.

Based on the relevant factors, Plaintiff's motion for expedited discovery or to compel the County to disclose the identities of Defendants John Doe No. 1 and John Doe No. 2 is denied.

### D.   Time to Serve Eric Paolilli and Dr. Raul Ulloa

Plaintiff concedes that his failure to serve Paolilli and Ulloa is the result of "law office failure," but argues that the Court should grant an extension to serve them in the absence of good cause.  (ECF No. 30 ¶ 6.; *see* P's Mem. at 6-7.)  Alternatively, Plaintiff requests that the Court dismiss the claims without prejudice before the statute of limitations for those claims expires. (P's Mem. at 6-7.)

The Court agrees that no good cause exists here, *see Williams v. U.S. Dep't of Hous. & Urb. Dev.*, No. 08-CV-2804, 2009 WL 742732, at *1 (E.D.N.Y. Mar. 20, 2009) ("Failure to show reasonableness and diligence is sufficient to preclude a finding of good cause."), and thus an extension is not required.  Nor, considering the relevant factors, does the Court find this case appropriate for a discretionary extension in the absence of good cause.

The first factor is whether the statute of limitations would bar a re-filed action if the period for service were not extended.  Although the Second Circuit has declined to adopt a *per se* rule, the first factor typically weighs in favor of granting an extension where the statute of limitations has run.  *See Zapata*, 502 F.3d at 198.  "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."  *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009); *see Benites*, 2023 WL 1966181, at *3-4; *Doe v. New York*, 97 F. Supp. 3d 5, 17 (E.D.N.Y. 2015).  Here, between the three-year statute of limitations for § 1983 cases brought in New York, *see Shomo*, 579 F.3d at 181; *Benites*, 2023 WL 1966181, at *3-4; *Doe*, 97 F. Supp. 3d at 17, and the 228-day extension for commencement of civil cases based on then-Governor Cuomo's

Executive Order 202.8 due to the COVID pandemic, *see White v. Gutwein*, No. 20-CV-4532, 2023 WL 5803708, at *3-4 (S.D.N.Y. Sept. 6, 2023) (applying Executive Order 202.8 to § 1983 claims); *Benites*, 2023 WL 1966181, at *4 (same); *Paul v. Capra*, No. 20-CV-5154, 2022 WL 992845, at *6 (S.D.N.Y. Mar. 31, 2022) (Executive Order 202.8 tolled § 1983 statute of limitations from March 20, 2020 through November 3, 2020); *Bonilla v. City of N.Y.*, No. 20-CV-1704, 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020) (applying Executive Order 202.8's tolling to § 1983 claim), the statute of limitations will not expire until November 3, 2023. Thus, the first factor weighs in favor of denying an extension.

As to the second factor – actual notice of the asserted claims – Plaintiff presents no argument that Paolilli and Ulloa have notice of the action, or even that Plaintiff has had any contact with them or made any effort to serve them. *See Benites*, 2023 WL 1966181, at *2; *Junior-Donohue*, 2023 WL 5152299, at *4. Plaintiff has long been aware that they are not employed by the County, but rather by a private contractor, (*see* ECF No. 21 at 1 n.1; P's Mem. at 6), but has not described any communication with them or even their employer.

The third factor – whether the defendant attempted to conceal the defect in service – does not aid Plaintiff. The record is silent as to any notice to Defendants of the existence of this lawsuit, and by definition they could not have concealed a defect in service of which they were unaware. More fundamentally, the issue here is not that they were served incorrectly, but rather that they have not been served at all. Further, although Plaintiff does not allege that he asked the County to assist in serving Paolilli and Ulloa, any refusal by the County to do so does not

amount to concealment.  *See Junior-Donohue*, 2023 WL 5152299, at *4.[12]  "[I]ndeed, [Plaintiff's] failure to take any steps [thereafter would] weigh[] against Plaintiff."  *Id.*

The fourth and final factor – prejudice to the defendants – also favors Defendants.  "[T]he self-evident purpose of Rule 4(m) is to speed litigation and to discourage haphazard and delayed service."  *Benites*, 2023 WL 1966181, at *5; *see Junior-Donohue*, 2023 WL 5152299, at *4.  In fact, the time to effect service was reduced from 120 days to 90 days to achieve that purpose.  *See Williams*, 2022 WL 2179726, at *6.  Despite the clear goals of FRCP 4, and the passage of more than a year since the filing of the FAC, Plaintiff has yet to even request that the Clerk of Court issue summonses to Paolilli and Ulloa.[13]  Moreover, despite having sued them in August 2022, Plaintiff now takes the position that because those defendants are employed by a private contractor that has previously been sued, the claims against them may better proceed in a separate suit.  (*See* P's Mem. at 6-7.)  This type of delay is exactly what Rule 4 is intended to prevent.  *See Junior-Donohue*, 2023 WL 5152299, at *4.  Although it may not be too late for Plaintiff to bring a separate action against Paolilli and Ulloa, the Court does not find it appropriate to assist Plaintiff in serving them "on a claim that accrued more than three and half years ago and about which they have received no notice," *Alsaidi v. City of N.Y.*, No. 12-CV-5771, 2013 WL 4052880, at *5 (E.D.N.Y. Aug. 12, 2013), given the "challenges of fading memories and difficulties in the collection of aging documents," *Fantozzi v. City of N.Y.*, 343 F.R.D. 19, 31 (S.D.N.Y. 2022); *see Zapata*, 502 F.3d at 198 ("[I]n the absence of good cause, no

---

[12] If anything, it appears that the County assisted Plaintiff by advising his counsel of the company that employed Paolilli and Ulloa.  (*See* ECF No. 21 at 1 n.1.)

[13] That summonses have not been requested or issued means that Plaintiff's counsel's representation in November 2022 that Paolilli and Ulloa "are in the process of being served," (ECF No. 21 at 1 n.1), could not have been true.

weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect.").

Thus, each of the above four factors weighs against Plaintiff's request for an extension of time to serve.

Furthermore, Plaintiff's failure to seek an extension or proactively address service issues before the statutory deadline also weighs against him.  *See Zapata*, 502 F.3d at 199 (no abuse of discretion in denying extension of time to serve, even where prejudice to defendants slight, where plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay"); *Junior-Donohue*, 2023 WL 5152299, at *5 (noting that plaintiff did not request any extensions during the 90-day period).  And "the fact that plaintiff is not proceeding *pro se*, but is represented by a licensed attorney, favors denial of the motion [for an extension]."  *Benites*, 2023 WL 1966181, at *5.

For these reasons, I decline to grant an extension of time to serve Defendants Paolilli and Ulloa, *see George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 448 (S.D.N.Y. 2016) ("Though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger."), and the claims against them are dismissed without prejudice.

IV.     **CONCLUSION**

For the reasons stated above, Plaintiff's motion for pre-conference discovery, leave to amend the complaint and an extension of time to serve Defendants Paolilli and Ulloa is DENIED.  Plaintiff's claims against Defendants John Doe No. 1 and John Doe No. 2 are

DISMISSED with prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff's claims against Eric Paolilli and Dr. Raul Ulloa are DISMISSED without prejudice for failure to serve pursuant to Fed. R. Civ. P. 4(m).  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 28), and close the case.

**SO ORDERED.**

Dated: September 26, 2023
      White Plains, New York

                                               CATHY SEIBEL, U.S.D.J.